UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

    - against -

CAROLYN RICHARDSON,

             Defendant.
------------------------------------------------------------x

MEMORANDUM AND ORDER
16-CR-461 (ILG)

**GLASSER**, Senior United States District Judge:

Pending before the Court is Carolyn Richardson's renewed motion for a sentence modification pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 98. In her renewed motion, Richardson advances grounds that warrant a finding that there are extraordinary and compelling reasons for granting her requested relief. The motion is therefore **GRANTED**.

## BACKGROUND

In August 2016, Richardson, together with her co-defendant, were indicted for their participation in healthcare fraud and a sophisticated scheme to illegally procure and distribute oxycodone. They obtained the Drug Enforcement Agency registration number of a practicing physician and then created fraudulent prescription pads with that physician's information. They included a phone number on the pad, the calls to which went to Richardson's cell phone. Pre-Sentence Report ¶¶ 5, 14, ECF No. 55. She and her co-defendant completed those fake prescriptions with fictitious patient identification information and forged doctors' signatures, and then recruited others to obtain the prescribed oxycodone and the refills of those prescriptions as needed from unsuspecting pharmacies. *Id.* ¶ 5. Richardson's co-defendant obtained a storage facility, which they filled with illegally obtained pharmaceutical narcotics, prescription pads, false

1

identifications and health care cards, records of their prescription filling schedules, and a gun. *Id.* ¶¶ 10–11, 13–16. Richardson kept keys to the storage facility and controlled access to it. *Id.* ¶ 18.

On April 6, 2017, pursuant to a plea agreement, Richardson pled guilty to Count One of the Indictment, which charged her with conspiring to possess with the intent to distribute oxycodone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). ECF No. 44. The Court sentenced her to twelve years in prison, to be followed by a three-year term of supervised release. ECF No. 64. She is currently scheduled to be released in October 2026.

Prior to her arrest and conviction, Richardson voluntarily underwent a cosmetic iris eye transplant in Lebanon. While serving her term of imprisonment, she began to experience difficulty with her transplanted irises. She was referred to and treated by an ophthalmologist employed by the Bureau of Prisons ("BOP"). The prescribed treatment she received for her deteriorating eye condition, Richardson alleged, was negligent and caused her eyesight to deteriorate severely. As a consequence, she commenced an action in the Southern District of New York alleging malpractice against the BOP and the individual treating doctors seeking compensation for the resulting harm she allegedly suffered. A settlement of that action was eventually reached by which she was awarded $2 million in damages.

Richardson's eye treatment, which continued over an extended period of time while incarcerated, required periodic visits to outside hospitals. Transportation to and from the hospital facilities was provided by the BOP, during which she was placed in the custody of a BOP guard. It was subsequently revealed that Richardson was regularly sexually abused and harassed by the guard into whose care she was entrusted. Being captive to his overbearing authority on those occasions and in fear of retribution if she were to complain, she succumbed to his demeaning

2

physical, mental, and emotional victimization. The guard was subsequently convicted and sentenced to more than three years in prison. *See* ECF No. 90-1 at 6–7.

Richardson alleges that she is virtually blind and requires the assistance of other inmates to move from one place to another in the facility in which she is incarcerated. She relies on her sense of touch to avoid injury from colliding with surrounding objects she cannot see. She also asserts that her necessary physical reliance upon others makes social distancing impossible, increasing her susceptibility to COVID-19.

Richardson has been a model prisoner. She has assisted the government by reporting improper conduct and dangerous facility conditions of which she becomes aware. She has expressed remorse for her role in contributing to the scourge of drug addiction, and the ruination of the lives of the addicts her criminal conduct caused.

## DISCUSSION

**I.      Legal Framework**

18 U.S.C. § 3582(c)(1)(A)(i) provides that

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that [] extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). It is worth noting that, previously, only the Director of the BOP was authorized to petition the Court for a reduction of a defendant's term of imprisonment if extraordinary and compelling conditions warranted it. Because the BOP failed to bring motions on defendants' behalf, the First Step Act amended the statute to permit a defendant to bring the

3

motion on his own behalf. The statute does not define what is an "extraordinary and compelling" reason, nor can it: as this Court has previously written, "[t]he combination and permutation of facts and events and the emotions they arouse that inhere in those two words are infinite and beyond classification." *United States v. Locascio*, No. 90-CR-1051, 2020 WL 12719849, at *2 (E.D.N.Y. July 17, 2020). Instead, the United States Sentencing Commission was directed to "describe what should be considered extraordinary and compelling reasons for [a § 3582(c)] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission's response was United States Sentencing Guidelines § 1B1.13, which the Second Circuit decided to be "clearly outdated and . . . in effect abolished," applicable "only to those motions that the BOP has made." *United States v. Brooker*, 976 F.3d 228, 235–36 (2d Cir. 2020).

As a result, in this Circuit, when a motion for compassionate release is brought by the defendant, a district court has total discretion to determine what constitutes an "extraordinary and compelling" reason. *United States v. Giddens*, No. 20-3270, 2021 WL 5267993, at *2 (2d Cir. Nov. 12, 2021); *see also United States v. Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) ("The determination as to what constitutes extraordinary and compelling reasons warranting a reduction is committed to the sound discretion of the district court."); *Brooker*, 976 F.3d at 237 ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.").

Even if the Court finds what are regarded to be "extraordinary and compelling reasons," it must also "consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a

4

defendant to obtain relief under § 3582(c)(1)(A)."). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "any pertinent policy statement," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[1] 18 U.S.C. §§ 3553(a)(1), (2), (5), (6). Then, after having considered the § 3553(a) factors, the court may still decide to deny the defendant's motion. *See* 18 U.S.C. § 3582(c)(1)(A)(i) ("[T]he court . . . *may* reduce the term of imprisonment . . . .") (emphasis added); *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (district court may deny compassionate relief motion for failure to exhaust administrative remedies, failure to show extraordinary and compelling reasons, or on a finding that the § 3553(a) factors do not warrant relief). As the statute requires, the Court has considered the § 3553(a) factors and concluded that they do not preclude the extraordinary and compelling reasons for granting Richardson's request for relief.

**II.     Application**

Richardson has presented extraordinary and compelling reasons warranting a reduction of her sentence due to her loss of eyesight attributable to the well-documented malpractice and neglect she allegedly suffered while in the custody of the BOP. *See* ECF No. 90-1 at 2–6.

When she was first taken into custody in 2016, she had nearly perfect vision; when she filed her motion for compassionate release in April 2020, her vision had deteriorated to 20/400 in her left eye and 20/160 in her right eye. *Id.* at 3, 6. Richardson now has multiple eye conditions resulting in legal blindness of both eyes, hypertension, depression, GERD, urinary incontinence, and various vitamin and mineral deficiencies diminishing her ability to adequately care for herself

---

[1] Upon consideration it would be concluded that disparity inheres in the application of Section 3582(c)(1)(A). In this case, for example, another defendant with a record similar to Richardson, convicted of the same crime, and sentenced to the same term of imprisonment but with unimpaired eyesight, would have no case for a reduced sentence.

5

in a prison environment, as acknowledged by Dr. John Meade, Clinical Director, FCI Tallahassee. ECF No. 114-3. Added to that compelling reason is the criminal sexual abuse to which she was subjected by a prison guard, and the apprehension of being subjected to similar criminal misconduct which her blindness would prevent her from anticipating and defending against.

*Brooker* made reference to the Sentencing Commission, even before the First Step Act was passed, having encouraged the BOP to file more compassionate release motions in the belief that "the *court* is in a unique position to determine whether the circumstances warrant a reduction." 976 F.3d at 237 (emphasis in original) (quoting U.S.S.G. § 1B1.13, n. 4). Reason would suggest that it is the BOP that is best positioned to make that determination. It is in the BOP facility that Richardson resides and is in contact with and observed by all the relevant BOP employees all day and every day. It is they who can reliably determine whether she is physically, mentally, emotionally laboring under extraordinary and compelling circumstances that warrant a sentence reduction.

On January 19, 2022, a telephone conference was held concerning Richardson's renewed motion for compassionate release. The government opposed the motion and was directed by the Court "to provide specific information regarding the BOP's ability to care for vision-impaired inmates." ECF No. 108 at 1. Richardson was also directed to provide supplemental information pertaining to her medical report. ECF No. 113-1 at 11, 21.

In a letter dated February 1, 2022, ECF No. 111, the government responded to the Court's direction by relating BOP's policy, in general terms, regarding inmates with vision impairments as advised by BOP's legal counsel. The government also related that the Medical Director of FCI Tallahassee confirmed that the facility could provide for Richardson's various impairments. The Medical Director was not identified, nor was the source of the report provided. Both became

6

known by an attachment to Richardson's response to the Court's direction. *See* ECF No. 113. Attached to that response and filed separately under seal was the BOP's Health Services Report that was generated on May 24, 2021. ECF No. 114-3. The Medical Director was Dr. John Meade, and in light of his report in ECF No. 114-3, referenced above, it is plain that the government's ECF No. 111 report in which he "confirmed that . . . FCI Tallahassee could adequately provide for the defendant's needs" referred primarily to the treatment of her eye.

Submissions dated September 21, 2022, in further support of Richardson's renewed motion had two attachments which confirm the unique position of the BOP to make the determination that a compassionate release motion requires. *See* ECF No. 118. The first attachment is ECF No. 118-1:

> Memorandum for    E. Strong, Warden
>     FCI/FDC Tallahassee
>
> Thru:    Kerri R. Pistro, Associate Warden of Programs
>     FCI/FDC Tallahassee
>
> Subject:    Request for Compassionate Release/RIS
>     Richardson, Carolyn . . .
>
> The Unit Team is recommending consideration be given to modify the imposed term of confinement for Ms. Richardson under Title 18, United States Code 3582(c)(1)(A). This request is being made because of extraordinary or compelling circumstances,

which are specifically described. The second attachment is ECF No. 118-2:

> Memorandum for    James C. Wills, Acting Assistant Director
>     Office of General Counsel
>     Bureau of Prisons
>
> From:    E. Strong, Warden
>     FCI/FDC Tallahassee
>
> Subject:    Request for Compassionate Release
>     Richardson, Carolyn
>
> The Unit Team is recommending consideration be given to modify the imposed term of confinement for Ms. Richardson . . . . This request is being made because of extraordinary or compelling circumstances,

which are specifically described.

As was suggested above, it is the BOP, its unit managers, associate wardens, wardens, and the relevant other employees of the BOP who are positioned to observe the whole defendant day in and day out, who are uniquely qualified to make the determination required by § 3582(c)(1)(A). And the Court finds that they have made it.

Having determined that the sentence imposed should be modified, the difficult question is to what extent. If the sentence imposed is punishment as the exaction of the debt to society which the criminal has incurred, what is the amount of the debt—i.e., what is the term of the sentence? The crime for which Richardson was convicted was punishable by a term of imprisonment for 20 years. 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). How was that number arrived at? The applicable Sentencing Guidelines advised a sentence of 210–240 months. *See* ECF No. 61 at 8; ECF No. 62 at 3. How were those numbers arrived at? The answers to those questions are difficult, if not impossible, because it is no more possible to relate criminal behavior to a number of months in prison than it is to measure pain and suffering in dollars and cents. *See* Lord Patrick Devlin, THE JUDGE 29 (1979).

In granting Richardson's renewed motion and considering the extent to which her sentence should be modified, the Court is mindful of the unfettered discretion that *Brooker* teaches the Court may exercise. It is also mindful of *United States v. Jones*, 460 F.3d 191 (2d Cir. 2006), decided by Judge Newman who, after the Guidelines were declared unconstitutional in *United States v. Booker*, 543 U.S. 220 (2005), wrote in *United States v. Crosby* that the sentencing judge must nevertheless consider the Guidelines, 397 F.3d 103, 111 (2d Cir. 2005), and in *Jones* he wrote that "the judge is not prohibited from including in that consideration the judge's own sense of what is

8

a fair and just sentence under all the circumstances. That is the historic role of sentencing judges," 460 F.3d at 195.

## CONCLUSION

For all the reasons given above, Richardson's renewed motion, ECF No. 98, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED** and her sentence is hereby modified to time served, to be followed by supervised release for 3 years. As indicated in ECF No. 118-1 and in accordance with a memorandum by the U.S. Probation Officer, ECF No. 109, Richardson's release will be to her father Ricky Richardson, 245 Mill Road, Apt. 2L, Staten Island, N.Y. 10306.

SO ORDERED.

Dated: Brooklyn, New York
October 6, 2022

/s/
I. Leo Glasser
Senior United States District Judge